IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| LOUIS SCARANTINO, Individually and On Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>SPARTON CORPORATION, JOSEPH J. HARTNETT, JAMES R. SWARTWOUT, DAVID P. MOLFENTER, JAMES D. FAST, CHARLES KUMMETH, FRANK A. WILSON, ALAN L. BAZAAR, JOHN A. JANITZ, ULTRA ELECTRONICS HOLDINGS PLC, and ULTRA ELECTRONICS ANEIRA, INC., )<br><br>Defendants. ) | Case No. 1:17-cv-1741<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on July 7, 2017 (the "Proposed Transaction"), pursuant to which Sparton Corporation ("Sparton" or the "Company") will be acquired by Ultra Electronics Holdings plc ("Parent") and Ultra Electronics Aneira Inc. ("Merger Sub," and together with Parent, "Ultra").

2. On July 7, 2017, Sparton's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Ultra. Pursuant to the terms of the Merger Agreement, shareholders of Sparton will receive $23.50 per share in cash.

3. On August 4, 2017, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Sparton common stock.

9. Defendant Sparton is an Ohio corporation and maintains its principal executive offices at 425 N. Martingale Road, Suite 1000, Schaumburg, Illinois 60173. Sparton's common stock is traded on the NYSE under the ticker symbol "SPA."

10. Defendant Joseph J. Hartnett ("Hartnett") has served as a director, Interim President, and Chief Executive Officer ("CEO") of Sparton since February 2016.

11. Defendant James R. Swartwout ("Swartwout") is a director of Sparton.

12. Defendant David P. Molfenter ("Molfenter") is a director of Sparton.

13. Defendant James D. Fast ("Fast") is a director of Sparton.

14. Defendant Charles Kummeth ("Kummeth") is a director of Sparton.

15. Defendant Frank A. "Andy" Wilson ("Wilson") is a director of Sparton.

16. Defendant Alan L. Bazaar ("Bazaar") is a director of Sparton.

17. Defendant John A. Janitz ("Janitz") is a director of Sparton.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

19. Defendant Parent is a company organized under the laws of England and Wales, and a party to the Merger Agreement.

20. Defendant Merger Sub is an Ohio corporation, an indirect wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Sparton (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22. This action is properly maintainable as a class action.

23. The Class is so numerous that joinder of all members is impracticable. As of July 5, 2017, there were approximately 9,860,635 shares of Sparton common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

28. Sparton, now in its 117th year, is a provider of complex and sophisticated electromechanical devices with capabilities that include concept development, industrial design, design and manufacturing engineering, production, distribution, field service, and refurbishment.

29. The primary markets served by the Company are Medical & Biotechnology, Military & Aerospace, and Industrial & Commercial.

4

30. Sparton currently has thirteen manufacturing locations and engineering design centers worldwide.

31. On July 7, 2017, the Individual Defendants caused the Company to enter into the Merger Agreement, pursuant to which the Company will be acquired for inadequate consideration.

32. The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.

33. Further, the Company must promptly advise Ultra of any proposals or inquiries received from other parties.

34. Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants Ultra a "matching right" with respect to any "Superior Proposal" made to the Company.

35. Further locking up control of the Company in favor of Ultra, the Merger Agreement provides for a "termination fee" of $7.5 million payable by the Company to Ultra if the Individual Defendants cause the Company to terminate the Merger Agreement.

36. By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

37. The merger consideration to be provided to plaintiff and the Class in the Proposed Transaction is inadequate.

38. Among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

39. Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

40. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

41. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

42. First, the Proxy Statement omits material information regarding Sparton's financial projections and the analyses performed by the Company's financial advisors, Raymond James & Associates, Inc. ("Raymond James") and Wells Fargo Securities, LLC ("Wells Fargo").

43. With respect to the Company's financial projections, the Proxy Statement fails to disclose: earnings; interest; taxes; depreciation and amortization; capital expenditures; investment in working capital; one-time non-recurring adjustments; restructuring expenses; incremental run-rate adjustments; expenses associated with being a public company; stock-based compensation expense; after-tax net income; and a reconciliation of all non-GAAP to GAAP metrics.

44. With respect to Raymond James' Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the range of terminal values of Sparton; (ii) Raymond James' basis for applying perpetual growth rates ranging from 2.0% to 4.0%; (iii) the inputs and assumptions underlying the discount rate range of 12.0% to 14.0%; and (iv) the Company's net debt.

45. With respect to Raymond James' Selected Companies Analysis, the Proxy

6

Statement fails to disclose the individual multiples and financial metrics for the companies observed by Raymond James in the analysis.

46. With respect to Raymond James' Selected Transaction Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Raymond James in the analysis.

47. With respect to Wells Fargo's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the range of terminal values of Sparton; (ii) the perpetual growth rates applied by Wells Fargo; and (iii) the inputs and assumptions underlying the discount rate range of 12.0% to 13.0%.

48. With respect to Wells Fargo's Selected Companies Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for the companies observed by Wells Fargo in the analysis.

49. With respect to Wells Fargo's Selected Transaction Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Wells Fargo in the analysis.

50. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Additionally, when a company discloses information in proxy materials that includes non-GAAP financial metrics, the company must also disclose comparable GAAP metrics and a quantitative reconciliation of the non-GAAP metrics to GAAP metrics. Further, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and

7

range of ultimate values generated by those analyses must also be fairly disclosed.

51. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Recommendation of the Company Board of Directors; Reasons for the Merger"; (iii) "Unaudited Prospective Financial Information"; (iv) "Opinion of Raymond James & Associates, Inc."; and (v) "Opinion of Wells Fargo Securities, LLC."

52. Second, the Proxy Statement omits material information regarding potential conflicts of interest of Raymond James and Wells Fargo.

53. For example, the Proxy Statement fails to disclose the past services Raymond James has provided to Ultra and its affiliates, as well as the amount of compensation received by Raymond James for such services.

54. The Proxy Statement also fails to disclose the past services Wells Fargo has provided to the Company, Ultra, and their affiliates, as well as the amount of compensation received by Wells Fargo for such services.

55. Additionally, the Proxy Statement fails to disclose Raymond James' and Wells Fargo's holdings in the Company's, Ultra's, and their affiliates' stock.

56. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

57. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Recommendation of the Company Board of Directors; Reasons for the Merger"; (iii) "Opinion of Raymond James & Associates, Inc."; and (iv) "Opinion of Wells Fargo

Securities, LLC."

58. Third, the Proxy Statement fails to disclose whether any confidentiality agreements executed by Sparton and prospective bidders contained provisions that are or were preventing those counterparties from submitting superior offers to acquire the Company.

59. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

60. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; and (ii) "Recommendation of the Company Board of Directors; Reasons for the Merger."

61. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Sparton's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Sparton

62. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

63. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Sparton is liable as the issuer of these statements.

64. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants

9

were aware of this information and their duty to disclose this information in the Proxy Statement.

65. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

66. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

67. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

68. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

69. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Ultra

70. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

71. The Individual Defendants and Ultra acted as controlling persons of Sparton within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Sparton and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various

10

statements that plaintiff contends are false and misleading.

72. Each of the Individual Defendants and Ultra was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

73. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Proxy Statement.

74. Ultra also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

75. By virtue of the foregoing, the Individual Defendants and Ultra violated Section 20(a) of the 1934 Act.

76. As set forth above, the Individual Defendants and Ultra had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: August 17, 2017

By: /s/ John C. Camillus
John C. Camillus
Law Offices of John C. Camillus, LLC
P.O. Box 141410
Columbus, OH 43214
Telephone: (614) 558-7254
Email: jcamillus@camilluslaw.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
Brian D. Long
Gina M. Serra

2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(484) 324-6800